**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

CULLMAN ELECTRIC COOPERATIVE; and    )
ST. PAUL INSURANCE COMPANY,          )
As Subrogee of Cullman Electric      )
Cooperative,                         )
                                     )
        Plaintiffs,                  )
                                     )
vs.                                  )          CV96-8-2354-NE
                                     )
TENNESSEE VALLEY AUTHORITY,          )
                                     )
        Defendant.                   )
_____)

**ENTERED**

MAY 1 3 1997

**MEMORANDUM OPINION**

This action is before the court on defendant's motion for summary judgment. Upon consideration of the motion, briefs, evidentiary submissions, and pleadings, this court concludes the motion is due to be granted, but only in part.

**I.  STATEMENT OF FACTS**

Tennessee Valley Authority ("TVA") is a federal agency organized and existing under the TVA Act of 1933, 16 U.S.C. §§ 831-831dd.  It maintains and operates the nation's largest public electric power system as part of a program to fulfill its mission for the development of the Tennessee Valley region's resources and economy.  TVA sells the majority of the power it produces at wholesale to 160 municipal or cooperative distributors under long-term, all requirements contracts. (Affidavit of Michael L. Nabors, at ¶ 2.)[1]  Plaintiff Cullman Electric Cooperative ("CEC") has contracted with TVA to distribute power since 1936.  TVA and CEC

_____

[1] Michael L. Nabors is a Customer Service Manager in TVA's Customer Service Center in Muscle Shoals, Alabama.

executed their most recent power supply contract in 1976. (Nabors Affidavit: Exhibit 1.) In 1983, however, TVA and CEC entered into a Lease and Amendatory Agreement which amended the 1976 power supply contract. (Nabors Affidavit: Exhibit 2.) Under the 1983 lease agreement, CEC leased several power facilities from TVA "and all facilities and equipment located therein" for a 13 year term. (*Id.*) One of the leased facilities was the Bremen Substation (*id.*, at ¶ 1(C)), where transformers reduce the voltage coming from TVA's Cullman Substation from 46,000 volts to 13,000 volts, before the power is distributed by CEC to its retail customers. (Nabors Affidavit, ¶ 6.)

On May 31, 1995, a falling tree came into contact with one of CEC's local distribution lines, causing a substantial fault current. (*Id.*, ¶ 8.) When the fault occurred, circuit breakers located at the Bremen Substation should have opened to stop the flow of excessive current, but the circuit breakers malfunctioned. (*Id.*) The excess current allegedly "resulte[ed] in damage to Cullman and several of its customers." (Plaintiffs' Complaint, ¶ 5). At the time of the explosion, plaintiff St. Paul Insurance Company ("St. Paul") had a policy of insurance in force and effect that insured CEC against losses from certain perils, including explosion. (*Id.*, ¶ 6.) St. Paul paid CEC $48,113.13 for damages incurred because of the explosion, and it now joins CEC in this action as a subrogee. Further, CEC alleges it "suffered damages in that this policy of insurance contained a deductible provision for damages which [it] was forced to incur. Cullman also suffered

2

other damages not covered by the insurance policy." (*Id.*) Thus, plaintiffs seek a "judgment against the Defendant in the amount of $48,113.13 and other damages, included but not limited to punitive damages." (*Id.*, ¶ 19.)

Plaintiffs allege that TVA was at fault for the explosion, because "[t]he protective devices located at the substation which should have operated to prevent damage were inoperable...." (*Id.*) Plaintiffs assert claims against TVA for negligence, wantonness, breach of warranty, and, a claim based on the Alabama Extended Manufacturer's Liability Doctrine (AEMLD).

TVA does not dispute that an explosion occurred, or that damage resulted therefrom. Instead, TVA asserts that the 1983 lease agreement expressly prohibits plaintiffs from recovering any damages for the explosion from it. In pertinent part, the lease agreement provides:

> 6. Indemnity. Cooperative shall reimburse TVA for any damage to TVA's property and to property in TVA's custody, and Cooperative releases the United States of America, TVA, their agents and employees from and shall indemnify and save harmless the United States of America, TVA, their agents and employees from any and all claims, demands, or causes of action for personal injuries, property damage, or loss of life or property sustained by Cooperative, its agents and employees, or third parties arising out of or in any way connected with ... the use, occupancy, maintenance, operation, failure, revision, repair, replacement, or removal of any of the Leased Facilities or Purchased Facilities, even though the personal injuries, property damage, or loss of life or property is caused, occasioned, or contributed to by the negligence, sole or concurrent, of the United States of America, TVA, their agents or employees. ...

(Nabors Affidavit: Exhibit 2, at 15.)

3

## II.   DISCUSSION

The validity and construction of the written contract at issue in this case is a question of federal law.  "This conclusion results from the fact that the contract was entered into pursuant to authority conferred by federal statute and, ultimately, by the Constitution." *United States v. Seckinger*, 397 U.S. 203, 209-10, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970). It is well settled that contractual provisions relieving a party from the consequences of its own actions are disfavored and must be strictly construed. *Id.*, 397 U.S. at 210-213, 90 S.Ct. at 884-886.

The Supreme Court has stated that "if the United States expects to shift the ultimate responsibility for its negligence to its various contractors, the mutual intention of the parties to this effect should appear with clarity from the face of the contract." *Id.*, 397 U.S. at 212, 90 S.Ct. at 885.   It is clear from the face of the contract at issue that TVA and CEC intended to shift the ultimate responsibility to CEC for "any and all claims, demands, or causes of action for personal injuries, property damage, or loss of life or property sustained by Cooperative ... or third parties." (Nabors Affidavit: Exhibit 2, at 15.)   That broad and all-inclusive language means just what it says: "any and all claims."

St. Paul seeks to recover from TVA as a subrogee.  "A subrogee is placed in the same position as the subrogor including the disabilities as well as the rights.  ...  A subrogee cannot escape a limitation of lability clause in the ... contract between the

4

subrogor and the ... [third party]." *D.L. Lee & Sons, Inc. v. ADT Security Systems, Mid-South, Inc.*, 916 F. Supp. 1571 (S.D. Ga. 1995), *aff'd*, 77 F.3d 498 (11th Cir. 1996).   Thus, all of plaintiffs' claims are barred (whether characterized as wantonness, negligence, breach of warranty or an AEMLD claim), unless plaintiffs can show some reason why the exculpatory provision should not be enforced.  Plaintiffs argue that the clause should be invalidated because it violates public policy.

**A.   Negligence, Breach of Warranty, & AEMLD**

There is no offense to public policy in the enforcement of a indemnity agreement that includes claims based on negligence, breach of warranty, or strict liability in tort (*i.e.*, plaintiffs' AEMLD claims).  *See Delta Air Lines, Inc. v. McDonnell Douglas Corp.*, 503 F.2d 239 (5th Cir. 1974),*cert. denied*, 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975)(clause barred claims of negligence and breach of warranty);[2] *Airlift International, Inc. v. McDonnell Douglas Corp.*, 685 F.2d 267, 269 (9th Cir. 1982)(clause barred claims of negligence, breach of warranty, and strict liability); *Tokio Marine & Fire Ins. v. McDonnell Douglas Corp.*, 617 F.2d 936 (2d Cir. 1980)(clause barred claims of negligence, negligent misrepresentation, breach of warranty, and strict liability); *In re Air Crash Disaster at Detroit Metropolitan Airport on August 16 1987*, 757 F. Supp. 804 (E.D. Mich.

---

[2] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

1989)(clause barred claims of negligence, breach of warranty, and strict liability).[3] Therefore, those claims are due to be dismissed.

## B. Wantonness

On the other hand, public policy requires that an exculpatory clause be invalidated to the extent it seeks to shift liability for wanton, willful, or intentional conduct. "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." *Lynn Strickland Sales and Service v. Aero-Lane Fabricators, Inc.*, 510 So. 2d 142, 145 (Ala. 1987). Thus, to the extent the parties in this action have sought to exculpate TVA for its own "willful breach of duty or wanton negligence, [the exculpatory clause] would ... be illegal." *Alabama Great Southern Railroad Company v. L & N Railroad Company*, 224 F.2d 1, 4 (5th Cir. 1955); *see also Solo Cup Co. v. Federal Insurance Co.*, 619 F.2d 1178, 1187 (7th Cir.), *cert. denied*, 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980)(citations omitted)("It is well settled that '[a] contract of insurance to indemnify a person for damages resulting from his own intentional

---

[3] *See also* MacGlashing v. Dunlop Equipment Company, Inc., 89 F.3d 932, 940 (1st Cir. 1996)("[W]e do not agree ... that private agreements allocating the risk of strict liability for tort damages in the circumstances presented here thwart public policy"); Berry v. Ponte & Sons, 400 A.2d 114 (N.J. App. Div. 1979)("Nor do we find any offense to public policy in the enforcement of a broad and all-inclusive indemnity agreement in the products liability field where liability of the indemnitee is predicated on strict liability. ... [I]f ordinary negligence, which connotes a modicum of active culpability on the part of the tortfeasor, may be the subject of an indemnification, we are satisfied, A *fortiori*, that strict liability in tort, which does not so connote, may also be subject to indemnification").

misconduct is void as against public policy and the courts will not construe a contract to provide such coverage.'"); *First American Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1118 (D.D.C. 1996)("there is simply no doubt that a defendant may not obtain indemnification for liabilities arising out of intentional tortious acts"); *Friedman v. Hartman*, 787 F. Supp. 411, 422 (S.D.N.Y. 1992)("Enforcement of a contractual obligation to provide ... indemnity to a party for that party's intentional misconduct would contravene the public policy of deterring and penalizing intentional misconduct through civil lawsuits brought by those persons injured by the misconduct"); *National R.R. Passenger Corp. v. Consolidated Rail Corp.*, 698 F. Supp. 951, 971 (D.D.C. 1988), *vacated on other grounds*, 892 F.2d 1066 (D.C. Cir. 1990)("Contract provisions which appear to indemnify against willful wanton, reckless, or intentional misconduct by the indemnitee are contrary to public policy"). "This rule is based on the simple principle long ago stated by Judge Cardozo, that 'no one shall be permitted to take advantage of his own wrong.'" *Solo Cup*, 619 F.2d at 1187 (quoting *Messersmith v. American Fidelity Co.*, 232 N.Y. 161, 133 N.E. 432 (1921)). Accordingly, plaintiffs' wantonness claims are not barred by the indemnity clause in the parties' lease agreement, because that exculpatory clause is void to the extent that it prohibits claims for wanton, willful, or intentional conduct by TVA.

## C. Punitive Damages

"TVA is a federally owned corporation and it is .. an agency or instrumentality of the United States. Though it may sue or be

7

sued in contract or tort, Congress has made no provisions allowing suit against it for punitive damages." *Painter v. TVA*, 476 F.2d 943, 944 (5th Cir. 1973)(footnote omitted); *see also* 28 U.S.C. § 2674 ("The United States ... shall not be liable for ... punitive damages"). Therefore, plaintiffs' request for punitive damages is due to be dismissed.

### III.  CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is due to be granted in part, but denied in part. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this $13\underline{th}$ day of May, 1997.

United States District Judge